## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

BENJAMIN C. ILDEFONSO,

                               Petitioner,

      v.                                  9:18-CV-1159
                                               (DNH/ATB)

ROSEMARIE WENDLAND, Superintendent,

                               Respondent.

BENJAMIN C. ILDEFONSO, Petitioner, pro se
DENNIS A. RAMBAUD, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, currently incarcerated at Otisville Correctional Facility,[1] filed this petition pursuant to 28 U.S.C. § 2254, challenging a 2013 judgment of conviction rendered after a jury found him guilty of three counts of Criminal Sale of a Controlled Substance in the Fourth Degree in Delaware County Court. (Dkt. No. 1, Petition ("Pet.") at 1). Petitioner was sentenced to three consecutive terms of four years of imprisonment, with one year of post-release supervision. The Appellate Division, Third Department unanimously affirmed his conviction, and the New York Court of Appeals denied leave to appeal. *People v. Ildefonso*, 150 A.D. 3d 1388 (3d Dep't

---

[1] When he filed this petition, petitioner was incarcerated at Ulster Correctional Facility. (Pet. at 1).

2017), lv. denied, 30 N.Y.3d 980 (2017).

Petitioner raises the following claims for this court's review:

1.      The evidence at trial was insufficient to support petitioner's convictions, and the verdict was against the weight of the evidence.

2.      Petitioner was denied a fair trial due to prosecutorial and judicial misconduct.

3.      Petitioner was deprived of the effective assistance of trial counsel.

4.      Petitioner is actually innocent.

(Dkt. No. 1-1 at 3).  Respondent has filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 13, 14).  For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

## DISCUSSION

I.   <u>**Relevant Facts**</u>

Respondent has included a detailed description of the facts and procedural history of this case.  (Dkt. No. 13-1 at 4-10).  This court will summarize the relevant facts for clarity, and will discuss specific facts as necessary in the analysis of petitioner's claims.

A.   **The Trial**

The underlying convictions stem from three separate "controlled substance buys" from petitioner by the Village of Walton Police Department ("Walton P.D."). In early

2012, Sergeant John Demeo of the Walton P.D. was working with an individual named Wayne Squires, a suspect in a local burglary. (Demeo: TT. 43; Squires: TT. 98, 132). In order to avoid a criminal charge, Squires made a deal with the Walton P.D. to cooperate as a confidential informant. (Squires: TT. 97-98). Specifically, Squires agreed to complete nine controlled substance buys from three different targets, and to testify at any subsequent criminal trials. (Demeo: TT. 44; Squires: TT. 98-99).

On February 11, 2012, Squires contacted Demeo and offered to "make a buy" from petitioner. (Demeo: TT. 45; Squires: TT. 99). Demeo proceeded to set up the buy, and enlisted four Walton P.D. police officers to assist with surveillance and support. (Demeo: TT. 45, 50). That evening, Demeo and police officer Jeffrey Clark picked up Squires at a park, then drove to a parking lot, where Clark searched Squires and determined that he was not in possession of any contraband. (Clark: TT. 141-44). After Squires was searched, Demeo gave him $40 in buy money. (Demeo: TT. 49; Squires: TT. 100). Demeo drove Squires and Clark to Griswold Street, where they parked in front of a vacant house. (Demeo: TT. 50; Squires: TT. 103-104; Clark: TT. 144). Squires exited the car, walked some distance to the side door of petitioner's residence,[2] and knocked. (Squires: TT. 103-04; Tallman: TT. 159-60; Alexander: TT. 163-64). Petitioner let Squires into his kitchen. (Squires: TT. 104). Squires told

---

[2]Squires testified that he was acquainted with petitioner prior to the controlled buys, and had been to petitioner's residence on High Street in the past. (Squires: TT. 94-95, 127, 130).

petitioner he "wanted eight pills," and petitioner retrieved a prescription bottle from the kitchen cupboard, counted out eight pills, and gave them to Squires.  (Squires: TT. 104-06).  Squires put the pills in his pocket and paid petitioner the $40.  (Squires: TT. 106). Squires exited petitioner's home and returned to the vehicle where Demeo and Clark were waiting.  (Squires: TT. 106; Tallman: TT. 160; Alexander: TT. 165).  Squires gave the pills to Demeo, and they drove back to the parking lot where Squires was once again searched by Clark. (Squires: TT. 107; Demeo: TT. 52-53).  Demeo eventually drove Squires home.  (Demeo: TT. 52, 57; Squires: 107; Clark: TT. 146-47).

Squires contacted Demeo the following day, offering to make another buy from petitioner.  (Squires: TT. 107-08; Demeo: TT. 58-59).  Demeo and Clark picked up Squires from the same park, and drove him to the same parking lot.  (Demeo: TT. 61; Squires: TT. 107-08).  Following an uneventful search, Demeo gave Squires $30, and drove him to Griswold Street.  (Demeo: TT. 61; Squires: TT. 110; Clark: TT. 148-49). Squires got out of the vehicle, walked to petitioner's residence, knocked on the door, and was let in.  (Squires: TT. 110; Cromwell: TT. 168).  Inside, Squires purchased six pills from petitioner.  (Squires: TT. 110-11).  Squires gave petitioner the $30, left the house, and returned to where Demeo was waiting.  (Demeo: TT. 62-63, Squires: TT. 112; Clark: TT. 149-50).  They drove back to the parking lot, where Clark searched Squires.  (Squires: TT. 112; Clark: TT. 150).

On February 26, 2012, Squires and Demeo arranged for a third controlled buy

from petitioner.  (Demeo: TT. 68-69; Squires: TT. 112-13).  Once again, Squires was searched prior to being dropped off near petitioner's residence with buy money. (Demeo: TT.  68-71; Squires: TT. 113-14).  Squires proceeded to petitioner's door, knocked, and was let in.  (Squires: TT. 115-16).  Inside, he purchased eight pills from petitioner in exchange for $40.  (Squires: TT. 116).  Squires returned to the vehicle, gave Demeo the pills, and was searched.  (Squires: TT. 117).

John Pierce of the New York State Crime Laboratory testified that, based on his analysis, the pills Squires purchased from petitioner contained a narcotic preparation, namely dihydrocodeinone combined with acetaminophen.  (Pierce: TT. 204, 206-07).

After hearing all the evidence, the jury convicted petitioner of three counts of Criminal Sale of a Controlled Substance in the Fourth Degree.

## B.    State Court Appeal

With the assistance of new counsel, petitioner filed a direct appeal, arguing that (1) he was deprived the effective assistance of trial counsel because counsel failed to: (a) develop and implement a cogent trial strategy, (b) make a proper motion for a pretrial suppression hearing, (c) ascertain before trial that the People failed to turn over certain *Rosario* materials, and (d) adequately cross-examine the People's witnesses; and (2) his sentence was excessive.  (SR 17-27).

On May 11, 2017, the Appellate Division, Fourth Department, unanimously affirmed the judgment of conviction.  *People v. Ildefonso*, 150 A.D. 3d 1388 (3d Dep't

2017).  The court found that petitioner had not been deprived of the effective assistance of trial counsel, and rejected petitioner's claim that counsel should have made a more specific request for a suppression hearing, noting that petitioner had "offer[ed] no explanation of what specifically defense counsel should have sought to suppress."  (SR 570).  The court further noted petitioner's failure to demonstrate "that he had even a colorable claim that he was entitled to the suppression of any evidence." (SR 570).

The court also rejected petitioner's assertion that counsel lacked a cogent trial strategy.  They acknowledged that counsel, in her opening statement, "[d]rew the jury's attention to the importance of [Squires's] credibility," along with addressing the importance of other relevant evidence.  (SR 571).  The court opined that counsel's preference for a concise opening statement did not establish a lack of a legitimate strategy. (*Id.*).

Next, the court found that counsel's cross-examination of the People's witnesses did not establish a lack of strategy, nor did it constitute ineffective assistance of counsel.  The Appellate Division noted that counsel's cross-examination drew attention to Squire's motivation to lie, along with the absence of proof that Squires had not "brought the drugs with him, secreted on his person, that he subsequently claimed to have purchased from [petitioner]."  (*Id.*).

Last, the court determined that there was no basis in the record to conclude that counsel should have known the prosecution had failed to turn over certain *Rosario*

materials prior to testimony, "at which point defense counsel successfully moved to compel the production of said materials." (*Id.*).

Overall, the Appellate Division observed that, considering counsel's representation as a whole, petitioner failed to establish that he was deprived meaningful representation. (*Id.*). Petitioner subsequently applied for leave to appeal to the New York Court of Appeals, arguing that he was deprived of both his federal and state constitutional right to effective assistance of counsel. (SR 573-74). On October 5, 2017, the Court of Appeals denied leave. *Ildefonso*, 30 N.Y.3d 980 (2017).

## II.    Generally Applicable Law

### A.    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the

doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182  (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original).  A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case.  *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo.  Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).  Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court."  *Parker v. Matthews*, 567 U.S. 37, 40 (2012).  Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ.  *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

8

### B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

### C.    Procedural Default

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal

claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*.

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed

10

the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

In addition, if the court finds that petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but would be barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). As stated above, a state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v.*

*Greene*, 527 U.S. 263, 289 (1999).

## III.    Analysis of Petitioner's Claims

### A.    Weight of the Evidence - Not Cognizable

Section 2254 provides that an application for writ of habeas corpus will be entertained on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Claims that are rooted in alleged errors of state law are not cognizable in a federal habeas corpus action. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (habeas statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (federal habeas relief does not lie for errors of state law).

It is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding.  *See Wright v. Conway*, No. 9:06–CV–0319 (GTS/GHL), 2009 WL 2982978, at *9 (N.D.N.Y. Sept. 14, 2009) ("Because federal habeas corpus review is not available to remedy mere errors of state law. . . no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial." (citation omitted)); *see also Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 311–12 (W.D.N.Y. 2011) ("A 'weight of the evidence' argument is a pure state law claim grounded in [N.Y.Crim. Proc. Law section

470.15] ... [thus,] it is not cognizable on habeas review."). Thus, this court may not re-examine matters of New York State law, and petitioner's weight of the evidence claim should be dismissed on that basis.

### B. Sufficiency of Evidence Claim - Procedural Default

Petitioner claims that "the evidence was legally insufficient" to establish a prima facie case that he knowingly and unlawfully sold a narcotic preparation. Specifically, petitioner takes issue with the perceived dearth of evidence as to each element of his convictions, the nature of which "should have [lead to] an acquittal." (Dkt. No. 1-1 at 1-2). Respondent argues that this claim is barred by petitioner's procedural default. The court agrees.

As previously discussed, petitioner's argument on direct appeal to the Third Department was limited to ineffective assistance of trial counsel and that his sentence was excessive. (SR 1-26). Thus, his claim of legal insufficiency is unexhausted. Moreover, plaintiff's unexhausted claim is procedurally defaulted because he cannot return to state court to exhaust the issue. Because the insufficient evidence claim is "record-based," it must be raised on direct appeal. Petitioner has already filed a direct appeal in the Appellate Division. He cannot return to the Court of Appeals because New York permits only one application for direct review. *Oquendo v. Senkowski*, 452 F. Supp. 2d 359, 368 (S.D.N.Y. 2006) (citing *Spence v. Superintendent*, 219 F.3d 162, 169-70 (2d Cir. 2000); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)); N.Y. Rules of

Court, Court of Appeals § 500.20.

Petitioner would also be unsuccessful in raising this ground in a motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10, because the claim would be dismissed due to petitioner's unjustifiable failure to raise the record-based federal claim on direct appeal.  The claim is, therefore, "deemed exhausted," but is subject to a procedural default.  This court must determine whether cause and prejudice exists as a result of the procedural bar, or if the failure to consider petitioner's claim will result in a "fundamental miscarriage of justice."

Petitioner maintains that the ineffective assistance of his appellate counsel constituted "cause" for his failure to raise a legal insufficiency claim on direct appeal. (Dkt. No .1-1 at 2).  However, as respondent accurately notes, "a claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Ramirez v. Lempke,* No. 9:13-CV-00072 (JKS), 2014 WL 3106218, at *6 (N.D.N.Y. July 7, 2014) (citing *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000)).  Here, there is no evidence that petitioner presented an independent ineffective assistance of appellate counsel claim to the state courts, such as through a petition for a writ of error coram nobis.  Thus, the alleged ineffectiveness of his appellate attorney may not serve to excuse his default. *See, e.g., Dove v. Lee*, No. 9:12-CV-0835(MAD), 2014 WL 1783587, at *3 (N.D.N.Y. May 5, 2014)(listing cases).  Absent any meritorious claim of "cause," the court need

not address the issue of prejudice.

Petitioner's last resort to overcome procedural default requires a showing that the denial of habeas relief would result in a fundamental miscarriage of justice, "i.e. that he . . . is actually innocent." *Hughes v. Sheahan,* 312 F. Supp. 3d 306, 336 (N.D.N.Y. May 2, 2018) (citing *House v. Bell,* 547 U.S. 518, 536-39 (2006)). To this end, petitioner contends that at the time of trial, counsel was in possession of clearly exculpatory "affidavits, hotel receipts, and bank statements," placing petitioner at another location when the alleged criminal sales took place. (Dkt. No. 1-1 at 6). Petitioner further alleges that counsel failed to present this evidence in petitioner's defense at trial, and further "failed to preserve these documents as evidence." (Dkt. No. 1-1 at 5-6).

To present a successful gateway claim of actual innocence,[3] a petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Rivas v. Fischer,* 687 F.3d 514, 541 (2d Cir. 2012) (quoting *Schlup v. Delo,* 513 U.S. 298, 316 (1995)). Thus, a claim of actual innocence

---

[3]In this context, a claim of actual innocence is not itself a constitutional claim, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim[s] considered on the merits." *Whitefield v. Graham,* No. 10-CV-3038, 2017 WL 4060571, at *3 (S.D.N.Y. Sept. 13, 2017) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538. This requires "a holistic judgment about 'all the evidence.' " *Id.* at 539 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). A substantive claim of actual innocence made by a petitioner seeking a writ of habeas corpus is separate and distinct from a procedural "gateway" claim, as further discussed below.

must be both credible – supported by new reliable evidence that was not presented at trial – and compelling – showing that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt[.]" *Rivas*, 687 F.3d at 541 (internal citations and quotations omitted).

Here, even assuming the purported exculpatory evidence may be considered "new,"[4] plaintiff has not physically presented this court (or any other reviewing court) with the alleged affidavits, hotel receipts, and/or bank statements which he contends "clearly demonstrate[] that [petitioner] was not at [his] residence during the alleged [drug] sales." (Dkt. No. 1-1 at 5). Nor has petitioner offered any evidence, other than his own contentions, that such records ever existed, that counsel was in possession of these records, or that the records contain relevant, exculpatory information. Consequently, this court cannot evaluate the probative value and/or reliability of any such evidence, nor determine whether it so compelling as to trigger the exception. *See Whitley v. Senkowski,* 567 F. Supp. 2d 490, 496 (S.D.N.Y. 2008) ("[T]he habeas court must determine whether the new evidence is trustworthy by considering it on its own merits. . .") (quoting *Doe v. Menefee,* 391 F.3d 147, 162 (2d Cir. 2004)). Petitioner is therefore unable to establish actual innocence, and his legal sufficiency claim is subject to an un-excused procedural bar.

---

[4]*See Rivas*, 687 F.3d at 543 (explaining that "new" reliable evidence for purposes of a miscarriage of justice claim is "evidence not heard by the jury.").

### C.    Ineffective Assistance of Trial Counsel

In ground three, petitioner maintains that his trial counsel was ineffective to the extent that (1) counsel's opening statement lacked strategy and structure for any legal defense, (2) counsel failed to conduct a more thorough cross-examination of the People's witnesses, (3) counsel failed to make "proper motions for pre-trial suppression hearing," (4) counsel failed to discover that the People had not turned over certain *Rosario* material, and (5) counsel did not present a defense case, including the submission of "clearly" exculpatory evidence demonstrating that petitioner was not at his residence during the alleged sales. (Dkt. No. 1-1 at 4-5). Respondent counters that the claim is unexhausted and procedurally barred. Alternatively, respondent argues that petitioner's claim should be dismissed on the merits.

### 1.    Exhaustion/Procedural Default

Petitioner's ineffective assistance of counsel claim raised in his direct appeal to the Third Department sounds in New York law and analysis. (SR 17-24). The cases cited, including *People v. Baldi* and *People v. Benevento*, are all New York cases, and petitioner's appellate counsel specifically analyzes each sub-argument of his ineffective assistance claim under New York's standard regarding "meaningful representation." (*Id.*). The sole reference to any federal constitutional right – "An essential ingredient in our system of criminal jurisprudence, rooted deeply in our concept of a fair trial with in the adversarial context is the right to the assistance of counsel guaranteed under both

17

the Federal and State Constitutions" – is followed by a case citation to *People v. Benevento,* 91 N.Y.2d 708, 711 (1998). (SR 17-18). Nevertheless, petitioner's arguments are clearly couched in state law terms, with no mention of *Strickland v. Washington*, 466 U.S. 668 (1984) and no application of the analysis for Sixth Amendment ineffective assistance of counsel claims. The prosecutor, in his opposition, argued that trial counsel "fulfilled [her] obligation under the New York State and Federal Constitutions to provide [petitioner] with effective representation," citing to *Strickland.* (SR 219). In denying petitioner's ineffective assistance of counsel claim, the Appellate Division cited to New York law and standards, with no reference to *Strickland* or the Sixth Amendment of the United States Constitution. *People v. Ildefonso,* 150 A.D.3d at 1388 ("Defendant was not deprived of the effective assistance of counsel. To prevail on an ineffective assistance of counsel claim *under the N.Y. Constitution . . .*") (emphasis added).

In 2011, the Second Circuit decided *Cornell v. Kirkpatrick*, and in doing so held that a petitioner's "mere mention" of "ineffective assistance of counsel," without more, was insufficient to alert the New York courts to the possibility of a federal claim. 665 F.3d 369, 376 (2d Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. at 32-34). The court determined that because the decision on which Cornell principally relied in his appeal– *People v. Baldi* – predated *Strickland v. Washington*, it "[could not] be convincingly argued that Cornell invoked the relevant standards of federal law." *Id.* In rejecting

petitioner's argument, the Court further noted that "[t]he New York state standard for ineffective assistance of counsel is notably different from the federal standard established by *Strickland* . . . and the Appellate Division cited generally to *Baldi* and not to the Sixth Amendment to the United States Constitution in summarily denying Cornell's ineffective assistance of counsel claim." *Id.*

Since *Cornell*, courts within the Northern District have addressed this issue on a case-by-case basis, finding the threshold for exhaustion to be contingent on the specific facts surrounding the claim.  *See Marra v. Martuscello*, No. 9:14-CV-1171 (GTS/DEP), 2017 WL 9511095, at *6 (N.D.N.Y. May 25, 2017) (petitioner failed to invoke the relevant standards of federal law where he only cited state court cases, including *People v. Baldi,* in his appeal to the Fourth Department, and the Appellate Division merely echoed the state standard of "meaningful representation" in its opinion); *Kindred v. Colvin,* No. 9:13-CV-1011 (LEK/ATB), 2014 WL 5662858, at *13-14 (N.D.N.Y. Nov. 4, 2014) (petitioner sufficiently exhausted his federal ineffective assistance claim where the New York cases cited in his appellate brief mention the Sixth Amendment and *Strickland*, the prosecutor cited the Sixth Amendment in his argument to the appellate division, and the county court analyzed the Sixth Amendment in its alternative ruling); *Carpenter v. Unger,* No. 9:10-CV-1240(GTS/TWD), 2014 WL 4105398, at 23 n. 29 (N.D.N.Y. Aug. 20, 2014) (expressing doubt whether petitioner fairly presented a federally based ineffective assistance claim on direct appeal where his argument was

couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of *Strickland* and no application of the analysis to be applied to Sixth Amendment ineffective assistance claims); *Lewis v. Griffin,* No. 9:14-CV-1411(DNH/ATB), 2015 WL 6692220, at *11-12 (N.D.N.Y. Nov. 2, 2015) (petitioner failed to exhaust his federal ineffective assistance claim, despite citing *Baldi* and *Benevento* in his appellate brief).

Based on the facts presented, petitioner failed to properly invoke the relevant standards of federal law in his direct appeal to the Third Department in order to satisfy his duty to exhaust. There is no question that the well-argued points in petitioner's brief are limited to an analysis under New York law.  Although some of the New York cases primarily relied on by petitioner reference *Strickland* and the federal constitution, petitioner did not cite these cases to invoke any federal analysis of his own claims, nor do the cases themselves invoke a constitutional analysis of factually similar claims.  *See Lewis v. Griffin,* 2015 WL 6692220, at *12; *see also Daye v. Attorney General,* 696 F.2d at 194 (A habeas petitioner may fairly present claim in state court by, among other things, reliance on state cases *employing constitutional analysis in like fact situations*)(emphasis added).  Admittedly, in his opposition the prosecutor explicitly referenced the federal standard to prevail on a claim of ineffective assistance under *Strickland*, arguing that petitioner failed to meet both the state and federal threshold for such a claim.  (SR 219-20).  Nevertheless, post-*Cornell*, I am skeptical that a

20

*respondent's* opposition to an appeal is sufficient to alert the state court of the federal nature of a *petitioner's* claim, which otherwise lacked any basis in federal law. This is especially true where, as here, the appellate court responded by analyzing and denying petitioner's request for relief solely based on New York precedent.

Furthermore, petitioner's failure to present his federal claim on direct appeal was not cured by his application for leave to the Court of Appeals. In applying for leave, petitioner identified the following issue to be raised on appeal: "Appellant was deprived of his constitutional right to effective assistance of counsel by his trial counsel's failure to provide meaningful representation as guaranteed under the Sixth Amendment of the United States Constitution and Article 1, § 6 of the New York State Constitution." (SR 573-74). Respondent argues that raising the matter for the first time before the Court of Appeals does not satisfy the exhaustion obligation. It is well settled that "[presenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it." *Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir. 2000) (citing *Castille v. Peoples,* 489 U.S. 346, 351 (1989)); *see also St. Helen v. Senkowski,* 374 F.3d 181, 183 (2d Cir. 2004). Because the Court of Appeals denied leave, they did not have an opportunity to consider petitioner's federal claim of ineffective assistance of counsel, which remains unexhausted.

Petitioner's unexhausted claim should be deemed exhausted but procedurally defaulted, because petitioner has no state-court forum in which to raise it. Petitioner

has already perfected the state court appeal to which he is entitled, and he cannot properly present his claim in a § 440.10 motion because it is record based, and could have been raised on direct appeal. *See Lewis*, 2015 WL 6692220, at *12. As previously discussed, petitioner lacks "cause" for his procedural default, and he fails to show that denial of habeas relief would result in a fundamental miscarriage of justice. Accordingly, petitioner's request for habeas corpus relief based on ineffective assistance of counsel is procedurally barred, and should be denied on such basis.

### 2.   Merits

Should the district court disagree with my recommendation to dismiss based on exhaustion and procedural default, this court alternatively recommends denying petitioner's ineffective assistance of counsel claims as meritless.

The relevant federal law governing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland.* First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment." *Hudson v. New York,* No. 07-CV-1327, 2007 WL 3231970, at *2–3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington,* 466 U.S. at 687). Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . .

22

a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692–93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

Upon review of an habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340,

345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)).  Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1).  *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111 (2009)).

### i.    Opening Statement

Petitioner contends that counsel was ineffective because her opening statement "lacked strategy and structure." (Dkt. No. 1-1).  The Third Department, in deciding this issue on the merits, disagreed – noting that counsel's comments "drew the jury's attention to the importance of the credibility of the CI who would testify against defendant and to the importance of the evidence as to whether and how the CI was searched before the controlled buys in order to establish that he did not already have drugs in his possession." *Ildefonso,* 150 A.D.3d at 1389.  The Appellate Division rejected the argument that counsel's "preference for a concise opening statement" established a lack of a legitimate strategy.  (*Id.*).

"The decision as to whether to make an opening statement, and its scope, is a matter of trial strategy," and a generally unfounded basis to establish ineffective assistance of counsel.  *Mobley v. Kirkpatrick,* 778 F. Supp. 2d 291, 313-14 (W.D.N.Y. Apr. 20, 2011) (citing *United States v. Kortright*, 205 F.3d 1326 (2d Cir. 2000)

(rejecting ineffective counsel claim based on, inter alia, "the content of counsel's opening statement," "because displeasure with defense counsel's trial strategy is not sufficient to establish ineffectiveness under the stringent requirements of *Strickland*, . . . and because [petitioner] has not shown that trial counsel's assistance was unreasonable under all the circumstances")); *see also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("[T]he decision whether to make an opening statement and when to make it is ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel.").  The Second Circuit has further noted that it "may often be preferable for a defense counsel to avoid committing prematurely to a theory," as it pertains to foregoing and/or limiting the scope of an opening statement.  *U.S. v. Wilson*, 216 F.3d 1074, 2000 WL 778021, at *3 (2d Cir. June 15, 2000) (citing *Strickland,* 466 U.S. at 690).

Here, the Appellate Division did not unreasonably apply *Strickland* in rejecting petitioner's contention that counsel's concise opening statement established a lack of legitimate strategy.  Petitioner has failed to demonstrate the absence of strategic explanation regarding the scope of counsel's opening statement, which she may have kept general to avoid limiting herself to a specific defense theory.  Moreover, petitioner has not demonstrated any prejudice resulting from counsel's opening statement.  There is certainly no indication that counsel disparaged her client to the jury in her opening statement, or otherwise painted petitioner in a bad light.  As respondent points out,

many of the topics that petitioner faults counsel for failing to more thoroughly explore in her opening statement were addressed by counsel on summation. (TT. 232-35, 237-45). Petitioner has not shown that, but for the brevity of his counsel's opening statement, the outcome of his trial would have been different. *See Perez v. Greiner,* No. 02 Civ. 1436, 2003 WL 2247759, at *11 (S.D.N.Y. 2003) (finding no prejudice under *Strickland* for counsel's "failure" to give opening statement, as opening statement by trial does not constitute evidence and would not have refuted any of the evidence presented against petitioner); *see also Burch v. Millas,* 663 F. Supp. 2d 151, 180 (W.D.N.Y. Aug. 14, 2009) ("The Second Circuit has observed that '[t]he question of prejudice under *Strickland* ordinarily entails consideration of the range of strategies and tactics available to a lawyer,' and '[o]n that basis, in case after case,' it has 'declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised.'") (citations omitted).

### ii.    Cross-Examination of People's Witnesses

Petitioner claims that counsel was ineffective for failing to develop certain areas of questioning on cross-examination of the People's witnesses, including the extent of Squires's "bias" and the lack of direct evidence corroborating Squires's testimony. (Dkt. No. 1-1 at 4-5). The Third Department found no deficiencies with the extent of counsel's cross-examination, acknowledging that counsel drew attention to Squires's motivation to lie and the limited nature of the searches performed on Squires.

*Ildefonso,* 150 A.D.3d at 1389-90.  The Appellate Division rejected petitioner's argument that counsel's choice not to conduct cross-examination of two of the surveillance police officers established a lack of a legitimate strategy. *Id.* at 1389.

"[T]he conduct of witness cross-examination is generally viewed as a matter of trial strategy, and, as such, is virtually unchallengeable 'unless there is no . . . tactical justification for the course taken.'" *Williams v. Kirkpatrick,* No. 16-CV-6466, 2018 WL 5984849, at *4 (E.D.N.Y. Sept. 24, 2018) (citing inter alia *Harris v. Artuz*, 100 F. App'x 56, 57 (2d Cir. 2004) *see also Love v. McCray*, 165 F. App'x 48, 49 (2d Cir. 2006) (presumption that defense counsel's actions were sound trial strategy "operates with particular force when the conduct at issue relates to counsel's conduct of cross-examination"). Additionally, "[r]eviewing courts are particularly hesitant to second-guess counsel's cross-examination tactics," because "counsel must often rely on trial instinct and human insight in making on-the-spot decisions" to further their case. *Williams v. Kirkpatrick,* 2018 WL 5984849, at *4 (citing *Harris*, 100 F. App'x at 58).

Petitioner makes no showing that counsel's cross-examination tactics fell below the Sixth Amendment standard as required by *Strickland*.  Counsel's efforts to impeach Squires's credibility and bring out his motivation to lie was clearly evident and competent throughout her cross-examinations.  (Demeo: TT. 75-76, 83-84; Squires: TT. 122-133).  Furthermore, counsel successfully elicited testimony from the People's witnesses calling into question the sufficiency of the searches conducted of Squires

27

(Demeo: TT. 88-89; Clark: TT. 151-153), and raising the inference that someone other than petitioner may have been inside the residence at the time of the sales (Demeo: TT. 85-87).  The petitioner has not shown that counsel's cross-examination, while perhaps lacking the verbatim questions raised in his petition, was so devoid of any "tactical justification" to be constitutionally deficient.  Moreover, plaintiff fails to show a substantial likelihood of a different outcome, had counsel adopted petitioner's additional lines of questioning.  *See Buchanan v. Chappius,* No. 9:15-CV-0407 (LEK), 2016 WL 1049006, at *7 (N.D.N.Y. Mar. 11, 3026) (citing *Harrington,* 562 U.S. at 111).

### iii.    Pre-Trial Motions

Petitioner next contends that his counsel erred in failing to specifically request a suppression hearing.[5]  (Dkt. No. 1-1 at 4-5). Prior to trial, counsel filed an omnibus motion with the county court, seeking to inspect the grand jury minutes, dismiss the indictment, conduct a probable cause hearing, preclude petitioner's identification and statements, and to compel discovery including disclosure of prior bad acts the People intended to use at trial.  (SR 39).  In support of her motion, counsel submitted an

---

[5]Petitioner also contends that counsel was ineffective for failing to adequately support her request for a probable cause hearing with relevant authority. (Dkt. No. 1-1 at 4-5).  This claim was not argued on appeal to the Third Department, the Appellate Division did not determine this issue on the merits, and it was not raised in petitioner's request for leave to the Court of Appeals.  (SR 17-24, 569-72).  Accordingly, this claim was not exhausted; and to the extent it cannot be raised again in state court should be deemed exhausted but procedurally defaulted.  Plaintiff fails to overcome this procedural default by showing cause and prejudice or actual innocence, and therefore we recommend denying relief based on such a claim.

attorney affidavit, client affidavit, and relevant documentary exhibits.  (SR 40-59).

Respondent opposed the motion (SR 60-61), and the county court issued an order,

granting petitioner's motion in part, and denying it in part.  (SR 63-65).

On appeal, petitioner argued that counsel's ineffectiveness was demonstrated by

her "failure to make a proper motion for a pre-trial suppression hearing."  (SR 20).  The

Appellate Division rejected petitioner's argument, noting petitioner's failure to identify

what exactly defense counsel should have sought to suppress, as well as the merits of

his claim that he was entitled to the suppression of evidence.  *Ildefonso,* 150 A.D.3d at

1389.

The state court reasonably applied the standards set forth in *Strickland* in

rejecting this claim.  The courts in this Circuit have repeatedly rejected similar

arguments, where a petitioner only makes conclusory assertions that a motion to

suppress should have been made, without identifying the specific evidence at issue, or

demonstrating that the motion was likely to succeed.  *See Paez v. U.S.*, No. 11-CV-

2688, 2012 WL 1574826, at *2 (S.D.N.Y. May 3, 2012) (failure to request suppression

hearing did not support ineffective assistance of counsel claim where petitioner failed

to suggest any plausible argument that a motion to suppress evidence would have

affected the outcome at trial); *Adams v. U.S.*, No.  11–CV–804, 2012 WL 3861261, at

*6 (W.D.N.Y. Sept. 5, 2012) (ineffective assistance of counsel claim deficient where

petitioner failed to identify the evidence he wanted suppressed, or how the suppression

of that (unidentified) evidence would have led to a different result). In light of petitioner's failure to articulate the same, his request for habeas corpus relief should not be granted on this basis.

### iv.  *Rosario* Material

Next, petitioner argues that counsel was ineffective because she did not discover that the People had failed to turn over certain *Rosario* material until the middle of trial; specifically, a written cooperation agreement between Squires and the Walton P.D. (Demeo: TT. 78-81).  Although the prosecution produced discovery materials to counsel prior to the trial, petitioner contends that counsel's failure to perceive that a cooperation agreement, that she had never seen, was missing from that discovery, constituted ineffective assistance. (SR 21).  The Appellate Division found no basis in the record to conclude that counsel should have known that the People had failed to turn over the cooperation agreement.  *People v. Ildefonso,* 150 A.D.3d at 1389.  They further acknowledged that upon revealing the existence of such material, counsel successfully moved to compel its production.  *Id.*

Likewise, this court finds no deficiency in counsel's conduct relative to the cooperation agreement.  Even assuming counsel knew the existence of a relationship between Squires and the Walton P.D. "several months before trial," there is no indication in the record to suggest that counsel should have known that the agreement had been memorialized in writing, in a document not already tendered by the

prosecution.  Moreover, even assuming counsel's performance in this regard was

inadequate, petitioner has not demonstrated any prejudice that resulted from counsel's

delay in uncovering the written cooperation agreement.  Upon learning of its existence,

counsel requested it immediately, reviewed it outside the presence of the jury, and

cross-examined Demeo (the People's first witness) on its contents.  (Demeo: TT. 78-

84).  There is nothing to suggest that "but for counsel's [allegedly] unprofessional

error[ ], the result of the proceeding would have been different."  *Strickland,* 466 U.S.

at 694.

###     v.     Defense Case/Exculpatory Evidence

Last, petitioner claims ineffective assistance in counsel's failure to present a

defense case at trial.  (Dkt. No. 1-1 at 4-5).  Specifically, petitioner identifies counsel's

failure to have the defendant "or anyone else" testify on his behalf.  (*Id.*).  Petitioner

also raises counsel's failure to submit certain exculpatory evidence to the jury, that was

allegedly provided to counsel by petitioner but never used at trial. (*Id.*).

This court need not reach the merits of these claims, because petitioner has failed

to exhaust them.  "Each factual claim made in support of an allegation of ineffective

assistance of counsel must be fairly presented to a state court before a federal habeas

court may rule upon it." *Brooks v. Donnelly*, No. 02-CV-5883, 2003 WL 23199559, at

*5 (E.D.N.Y. Dec. 8, 2003) (citing *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir.1991)

(dismissing petition as unexhausted where petitioner's claim of ineffective assistance of

counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole." (quotation omitted)). However, where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Id.* (quoting *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir.1994)).

In his argument to the Third Department, petitioner failed to raise the specific allegation that his attorney was in possession of clearly exculpatory material that she did not introduce at trial, despite now characterizing it as his "most important[ ]" contention. Instead, on appeal petitioner argued trial counsel's (1) failure to have petitioner testify, and (2) error in allowing the "uncorroborated testimony of a criminal [to be] unchallenged by any defense evidence." (SR 23). In seeking leave to appeal to the Appellate Division, petitioner did not raise a claim based on counsel's failure to have the defendant testify, or otherwise mount a defense. (SR 574).

Accordingly, petitioner should be deemed to have abandoned the relative claims he presently brings in federal court. With respect to his contention regarding counsel's failure to use exculpatory evidence in her possession, this claim is factually distinct from any arguments made before the state courts. Because it constitutes more than a supplemental claim, it should have first been presented to the state courts, in order for

them to consider the circumstances as a whole.  Petitioner's failure to address the claim individually renders it unexhausted.

Because he can no longer present these claims in state court, they should be deemed exhausted but procedurally defaulted.  Petitioner fails to present cause or demonstrate that this procedural bar would result in a "miscarriage of justice." Therefore, this court recommends that habeas relief be denied as to this claim.

### D.    Prosecutorial and Judicial Misconduct - Procedural Default

Petitioner argues that he was deprived of his constitutional rights as a result of prosecutorial and judicial misconduct. (Dkt. No. 1-1 at 3).  Specifically, petitioner contends that the prosecution withheld evidence, and the court was "arbitrary and capricious" in denying petitioner's various motions before and at trial.  (*Id.*).

We need not reach the merits of petitioner's claim, as it should be deemed exhausted but procedurally barred, without a basis for exception.  Petitioner failed to raise these allegations of misconduct in his appeal to the Third Department, as well as in his request for leave to appeal to the Court of Appeals, rendering the claims unexhausted.  (SR 5-29, 574).  Petitioner cannot, however, return to state court to adjudicate these claims, as he has already filed the direct appeal to which he is entitled. Furthermore, the claim would be subject to dismissal on a § 440.10 motion, for failure to raise the record-based federal claim on direct appeal.  The claims are, therefore, procedurally defaulted.

Petitioner cannot overcome his procedurally barred habeas corpus claim. Although he once again attributes his failure to raise the claim on appeal to the ineffectiveness of his appellate counsel, plaintiff's failure to file a writ of corum nobis defeats such an assertion. Furthermore, plaintiff fails to demonstrate that the alleged misconduct resulted in the conviction of one who is "actually innocent." The procedural bar therefore prevents an adjudication of this claim on the merits, and compels dismissal.

### E.    Actual Innocence - Not Cognizable

Petitioner raises what this court interprets to be a freestanding claim of actual innocence based on the affidavits, hotel receipts, and bank statements allegedly withheld by his counsel during trial. (Dkt. No. 1-1 at 6). Petitioner did not raise an actual innocence claim at any stage of his state appeal, and attributes any failure to exhaust to his appellate attorney and petitioner's capacity as a layman in regards to the law. (*Id.*).

The Supreme Court has yet to resolve the issue of whether a freestanding actual innocence claim may be recognized as a substantive basis for habeas relief. *See McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013). Despite its reluctance to resolve this issue, the Court has hinted that a successful actual innocence claim would, "at the least . . . require[ ] more convincing proof of innocence than" what is required on a gateway claim. *House v. Bell,* 547 U.S. 518, 555 (2006); *see also Herrera v. Collins,* 506 U.S.

at 417 (noting that if the Court were to assume, for the sake of argument, that in a capital case a truly persuasive demonstration of actual innocence would warrant federal habeas relief, the "threshold showing for such an assumed right would necessarily be extraordinarily high[.]").

"Whether a freestanding claim of innocence may be adjudicated, either in capital or noncapital cases, remains 'an open question.'" *DiMattina v. U.S.*, 949 F. Supp. 2d 387, 416 (E.D.N.Y. June 13, 2013) (citing *Dist. Attorney's Office v. Osborne,* 557 U.S. 52, 71 (2009) (assuming, without deciding, that a freestanding innocence claim exists in a non-capital case)) (other citations omitted).  The Second Circuit continues to limit the scope of actual innocence claims as a gateway to federal review of an otherwise procedurally barred claim.  *See Hyman v. Brown,* 927 F.3d 639, 655-56 (2d Cir. June 24, 2019) (citing *Rivas v. Fischer* for the proposition that the Supreme Court "has never explicitly recognized the existence of a freestanding actual innocence claim"); *Bryant v. Thomas,* 725 Fed. App'x 72, 73 (2d Cir. 2018) ("Federal law as of yet does not recognize freestanding actual innocence claims.").  The courts within this Circuit have been equally hesitant to reach the merits of freestanding actual innocence claims, in light of the uncertainty, "or have denied the claim based on the petitioner's inability to meet the 'extraordinarily high' standard." *Adsit v. Annucci,* No. 9:16-CV-00817 (CMH), 2018 WL 1175090, at *6 (N.D.N.Y. Jan. 11, 2018) (listing cases).

Nevertheless, the Supreme Court's commentary on the burden of proof that

would be required renders any further discussion moot.  Petitioner has not produced any new evidence for this court to review, without which we cannot assess whether his claim of actual innocence is both credible and compelling.  As previously discussed, petitioner fails to satisfy the threshold for a gateway actual innocence claim; a bar set somewhere below a freestanding claim of actual innocence.  Accordingly, petitioner could not meet the heightened standard of a substantive actual innocence claim, should it exist.  *See Sweeney v. Laffin*, No. 12-CV-6483, 2017 WL 4342138, at *7 (S.D.N.Y. Sept. 28, 2017) (internal quotation marks and citations omitted) ("Insofar as Petitioner advances a freestanding actual innocence claim as a ground for habeas relief, the Court notes that the Supreme Court has never expressly held that a petitioner may qualify for habeas relief based solely on a showing of actual innocence. However, even if a freestanding actual innocence claim could warrant habeas relief, Petitioner has failed to make such a showing because the threshold for any hypothetical freestanding innocence claim [i]s 'extraordinarily high,' and such a showing requires more convincing proof of innocence than the showing of innocence necessary to satisfy [*Schlup v. Delo*].").

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.

These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: October 31, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge